UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Edgar Rudolph Samuelson,

        Plaintiff,

        v.

ARAMARK Services, Inc.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 04-4495 ADM/AJB

_____

Brian E. Cote, Esq., Cote Law Firm, Ltd., Minneapolis, MN, argued for and on behalf of Plaintiff.

Michael S. Ryan, Esq., and Kathryn R. Downey, Esq., Murnane Brandt, St. Paul, MN, argued for and on behalf of Defendant.

_____

**I. INTRODUCTION**

On July 7, 2006, oral argument before the undersigned United States District Judge was heard on Defendant ARAMARK Services, Inc.'s ("ARAMARK") Motion for Summary Judgment [Docket No. 47]. In his Amended Complaint ("Complaint") [Docket No. 15], Plaintiff Edgar Rudolph Samuelson ("Samuelson") alleges ARAMARK violated the Americans with Disabilities Act ("ADA") by terminating his employment. Defendant's Motion for Summary Judgment is granted. Additionally, Plaintiff's Motion to Strike [Docket No. 64] and Defendant's Motion to Strike [Docket No. 69] are denied.

**II. BACKGROUND**

Plaintiff Samuelson is a 49 year old male who began working for Minnesota Viking Food Service ("MVFS") in 1991. Samuelson Dep. (Downey Aff. [Docket No. 50] Ex. E) at 8, 45. Samuelson alleges he suffers from two disabilities, polycystic kidney disease, and left leg pain caused by vascular surgery. Compl. ¶¶ 10, 12. In October 2001, Samuelson had femoral bypass

surgery on his left leg.  Samuelson Dep. at 277; St. Germain Dep. (Downey Aff. Ex. F) at 47, 58. In June 2005, subsequent to his termination, Samuelson underwent kidney transplant surgery. Samuelson Dep. at 350.

During his tenure at MVFS, Samuelson worked at a variety of locations in a number of capacities, and was eventually assigned to the Eagan Post Office location in August 2002 as the Food Service Director.  Samuelson Dep. at 102.  Samuelson claims his placement at the Eagan Post Office was an accommodation for his leg impairment.  Id. at 89-90, 95-100.  During his time working at the Eagan Post Office, Samuelson's supervisor was Richard St. Germain ("St. Germain").  Id. at 102-03, 105.  Samuelson also avers that MVFS accommodated his leg condition by allowing him to rest and "prop my leg up" during the day.  Id. at 380.  While working for ARAMARK, a tenure of approximately one month, Samuelson did not request any accommodation, beyond once mentioning one day that he had a bad leg and would have to sit down occasionally.  Id. at 399.

In August 2003, ARAMARK purchased MVFS.  Barry Dep. (Downey Aff. Ex. C) at 39. In July 2003, prior to completion of the purchase of MVFS, ARAMARK determined that if an MVFS contract for any location was retained, the managers and associates employed at those locations would be retained.  Barry Dep. at 36, 38, 51-53.  Conversely, if a location was not retained, the managers and associates would be laid off, unless ARAMARK had an actual opening for them at another location.  Id.  These conversations were held by Bryan Zimmerman ("Zimmerman"), Aimee Barry ("Barry"), and ARAMARK's corporate counsel.  Id.

Following the purchase of MVFS, ARAMARK held a meeting for all former MVFS employees in September 2003 to review ARAMARK's benefits package.  Samuelson Dep. Ex. 27 (Downey Aff. Ex. H).  At the meeting, ARAMARK distributed job applications, and asked

that the applications be returned at the meeting or to the local ARAMARK office.  Barry Dep. at 30-31, 33.  Additionally, a form was distributed to allow employees to identify themselves as disabled, allowing the employee's manager to seek any necessary accommodations from Human Resources.  Id. at 91-92.  Samuelson alleges that he attended this meeting and filled out both an application and a form identifying himself as disabled, listing peripheral vascular disease as the cause of his disability.  Samuelson Dep. at 301-02.  However, ARAMARK has been unable to locate any documents submitted by Samuelson from that meeting.  Barry Dep. at 33-34.  Barry, the Human Resources Director, has also been unable to locate anyone who saw or remembers Samuelson's documents identifying himself as disabled, and she was unaware at the time that Samuelson suffered from a disability.  Id. at 95, 98.  Samuelson has also not produced a copy of the documents.

     Prior to the sale of MVFS to ARAMARK, the Eagan Post Office, in June 2003, decided not to renew MVFS's contract.  Woods Dep. (Downey Aff. Ex. B) at 28, 29.  Although MVFS submitted a revised bid to the Eagan Post Office, it was informed in July 2003 that the new contract was awarded to another provider.  Id. at 28-30.  After ARAMARK acquired MVFS, Samuelson stayed in his position at the Eagan Post Office until the contract expired in September 2003.  Samuelson Dep. at 363-64; Woods Dep. at 66.  Prior to the closing date at the Eagan Post Office, Patrick Woods ("Woods"), a former Vice President of Operations at MVFS who became a District Manager with ARAMARK, spoke with St. Germain about whether ARAMARK had another job available for Samuelson.  Woods Dep. at 66-67.  During its corporate existence, MVFS had a policy of placing its managers in "floating" positions when jobs ended until they could be permanently assigned.  Woods Dep. at 67-68; St. Germain Dep. at 38.  However, ARAMARK's policy, which Woods testified he was in the process of learning, did not permit

for floating managers, but rather called for managers with no specific job assignment to be terminated. Zimmerman Dep. (Downey Aff. Ex. A) at 29; Barry Dep. at 53-54; Woods Dep. at 39, 67-68. Because he was unaware of ARAMARK's policy, Woods temporarily assigned Samuelson to a week long project. St. Germain Dep. at 38-39; Samuelson Dep. at 245, 364. Before the end of that week, Woods assigned Samuelson to another three to four week floating project. Samuelson Dep. at 245-47. After Woods assigned Samuelson to the second floating project, he spoke with ARAMARK's Human Resource Department in St. Louis, who informed him that because no permanent manager position was open, Samuelson would be laid off. Woods Dep. at 68-69, 71. Woods also spoke with Bryan Zimmerman, at the time the Regional Operations Director at ARAMARK, who confirmed that if no permanent position was open for Samuelson, he must be terminated. Zimmerman Dep. at 11, 29.

St. Germain attempted to contact Samuelson on Friday, September 19, 2003, but could not reach Samuelson. St. Germain Dep. at 48, 50, 58. Realizing Samuelson's phone line was being used for a facsimile, St. Germain faxed him a note asking him to call. Id. at 58; Samuelson Dep. at 212-13. Samuelson called St. Germain on Monday, September 22, 2003, at which time St. Germain informed Samuelson that he was terminated. St. Germain Dep. at 47, 58; Samuelson Dep. at 213, 259.

Following his termination, Samuelson applied for a position at ARAMARK Education Services, Inc. ("ARAMARK Educational Services"), a business entity separate from ARAMARK. DeVet Aff. [Docket No. 53] ¶¶ 2-3; Nitzberg Aff. [Docket No. 52] ¶¶ 2-3; Zimmerman Dep. at 16. Samuelson interviewed for a Food Production Manager position. DeVet Aff. ¶ 5. However, this position differed from Samuelson's previous experience with ARAMARK, involving more production in the kitchen, including preparation for retail locations

4

and production for commissary and catering locations.  Id. ¶ 6.  ARAMARK Education Services declined to hire Samuelson on the grounds that he lacked the necessary technical experience for the position.  Id. ¶ 7.  Samuelson testified that during his interview, his disabilities were not discussed, nor did he mention his disabilities on his application.  Samuelson Dep. at 300-01; Downey Aff. Ex. I.  Steven Nitzberg and Karen DeVet, the ARAMARK Educational Services employees who made the hiring decision, did not consult anyone at ARAMARK before deciding not to hire Samuelson.  DeVet Aff. ¶ 11; Nitzberg Aff. ¶ 7.

On March 8, 2004, Samuelson filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC").  Downey Aff. Ex. J.  In the EEOC complaint, Samuelson alleged that he was fired from his position at ARAMARK and not hired by ARAMARK Educational Services because of his gender, age, and disability.  Id.  An EEOC questionnaire filled out by Samuelson lists only his vascular surgery resulting in mobility problems as his disability.  Downey Aff. Ex. K.  Samuelson's Complaint in this action alleges both the issues with his leg and polycystic kidney disease as disabilities.  Compl. ¶¶ 10-13.

All relevant ARAMARK employees gave deposition testimony relating to their understanding of Samuelson's disabilities.  St. Germain testified that he was aware that Samuelson had undergone vascular surgery on his leg in 2001, but did not know that Samuelson still suffered from physical symptoms related to the surgery.  St. Germain Dep. at 19-20.  Samuelson believed that St. Germain was aware of his leg condition, but did not know whether St. Germain was aware that his leg condition was an issue at the time of his termination in September 2003.  Samuelson Dep. at 380-81.  St. Germain related a single circumstance where Samuelson complained of leg soreness, which occurred after a long day standing outside.  St. Germain Dep. at 31-33.  St. Germain testified that he believed Samuelson was simply tired from

standing most of the day.  Id.  Samuelson also stated that he told St. Germain shortly before his termination that he needed a kidney transplant; however, St. Germain testified he had no memory of this conversation.  Id. at 33; Samuelson Dep. at 393.

Patrick Woods, who supervised Samuelson in August and September 2002, testified that he had no knowledge of Samuelson's disabilities.  Woods Dep. at 49, 54.  Although Woods supervised Samuelson for two months, he stated that he only visited the Eagan Post Office once or twice per month.  Id. at 105-06.  Samuelson stated that he believed Woods was aware of his leg condition, but conceded that he did not know whether Woods was aware his leg was an issue in his termination.  Samuelson Dep. at 381.

Zimmerman only met Samuelson once in passing.  Zimmerman Dep. at 8-9; Samuelson Dep. at 190-91.  Zimmerman did not observe that Samuelson suffered from any mobility issues.  Id. at 25.  He testified that he was unaware that Samuelson had any disability at the time he was terminated.  Id.  Barry never met Samuelson, nor was she aware of Samuelson disabilities until she received Samuelson's EEOC complaint.  Barry Dep. at 21, 98-99.

### III. DISCUSSION

**A.      Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion

for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.    Americans with Disabilities Act Claim**

In his Complaint, Samuelson alleges one claim, predicated on the ADA.  In the instant action, Samuelson has presented no direct evidence of discrimination based on his disabilities.[1]  Consequently, the burden shifting framework described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), applies to Samuelson's ADA claim. Wenzel v. Mo.-Am. Water Co., 404 F.3d 1038, 1040 (8th Cir. 2005) (applying framework to ADA claim).  Under this framework, the plaintiff employee must initially establish a prima facie case of discrimination.  This showing creates a presumption that the employer acted unlawfully.  Id.  The burden of production then shifts to the employer who must provide legitimate, non-discriminatory reasons for the adverse employment action.  Id.  If the defendant meets this requirement, the burden returns to the plaintiff to show that the employer's explanation is pretextual.  Id.

Here, Samuelson can not establish a prima facie case of disability discrimination because he has not proffered sufficient evidence to allow an inference that he was terminated by ARAMARK based on his disability.  The evidence proffered by Samuelson is not sufficient to demonstrate that the decision makers who decided to terminate Samuelson were aware of the extent of his disabilities.  Although St. Germain was aware that Samuelson had vascular surgery

---

[1] Fur purposes of the instant Motion, it will be assumed, without being decided, that Samuelson's alleged disabilities are disabilities within the meaning of the ADA.

on his leg a couple of years prior to the termination, he was not aware that it remained a disability for Samuelson. St. Germain Dep. at 19-20. The sparse evidence offered by Samuelson to establish a prima facie case is that he once asked St. Germain if he could sit and rest at the end of a long day, and, although alleged by Samuelson but not supported by any other evidence, St. Germain rode in Samuelson's car, which had a handicap placard hanging on the rear view mirror. Id. at 31-33. There is no other evidence that any of the other executives at ARAMARK knew of Samuelson's disabilities. Although Samuelson argues that Woods must have known of his condition, he proffers no evidence to support this proposition.

Samuelson argues that, at a minimum, the knowledge of St. Germain should be imputed to Woods. The case cited by Samuelson to support this proposition, however, is factually disparate from the one at bar. Kimbro v. Atlantic Richfield Co., 889 F.2d 869 (9th Cir. 1989). In Kimbro, the plaintiff's supervisor was aware that the plaintiff had missed work because of his disability. Id. at 875. Additionally, the supervisor was aware that there was a company policy requiring him to inform the decision makers that an accommodation was necessary, but did not adequately inform them of this fact. Id. at 876-77. In the instant case, St. Germain testified that at the time of Samuelson's termination, he was not aware of the severity of his physical problems. St. Germain Dep. at 19-20. Samuelson has presented no evidence that he missed time away from work in the period leading up to his termination, or was hampered in his ability to perform his job beyond occasionally resting his legs. Samuelson Dep. at 380. Additionally, no evidence has been presented that the ARAMARK employees who made the ultimate decision to terminate Samuelson – Woods, Zimmerman, and ARAMARK Human Resources – were aware that Samuelson was allegedly disabled. Woods Dep. at 49, 54; Zimmerman Dep. at 25. As a

result, Samuelson can not demonstrate that his termination was a result of any disability discrimination.

Even if Samuelson could demonstrate a prima facie case of discrimination, ARAMARK has presented sufficient, non-discriminatory reasons for terminating Samuelson. When MVFS was purchased by ARAMARK, ARAMARK eliminated "floating" managers. Zimmerman Dep. at 29; Barry Dep. at 53-54; Woods Dep. at 39, 67-68. Previously, at MVFS, managers between positions were "floated" to temporary assignments until a permanent position could be found. Woods Dep. at 67-68; St. Germain Dep. at 38. However, prior to purchasing ARAMARK, ARAMARK executives implemented the ARAMARK policy of terminating managers if a permanent spot did not exist. Zimmerman Dep. at 29; Barry Dep. at 53-54; Woods Dep. at 39, 67-68. Samuelson has offered no evidence to rebut this testimony from ARAMARK executives. Although Woods did "float" Samuelson for one week following the close of the Eagan Post Office, Woods testified that he was not yet familiar with ARAMARK policy. Woods Dep. at 39, 67-68.

Samuelson argues that Pat Gustafson is an example of an ARAMARK manager who was floated between assignments. However, Gustafson managed a school account which only operated during the school year. St. Germain Dep. at 101. Consequently, her experience is not comparable to Samuelson's. Because Samuelson has failed to proffer evidence of a prima facie case of discrimination, and because ARAMARK has presented evidence of a legitimate, non-discriminatory reason for terminating Samuelson, ARAMARK's Motion is granted.

Samuelson also alleges his Complaint includes a claim that he was not hired at ARAMARK Educational Services because of his disability and his age. As a threshold matter, ARAMARK Educational Services is not a party to this lawsuit. To the extent that Samuelson

has properly pled a complaint for disability and age discrimination based on ARAMARK Educational Services' failure to hire him, the Motion for Summary Judgment of ARAMARK is granted. Samuelson has proffered no evidence that the decision makers were aware of his disabilities, nor has he presented any evidence related to age discrimination.

**C.    Motions to Strike**

Samuelson has filed a Motion to Strike Defendant's Summary Judgment Motion, arguing that date on which the Motion was heard was outside the time period set by Magistrate Judge Arthur J. Boylan [Docket No. 44]. Although the hearing was, indeed, heard outside the time set by the Scheduling Order, this was because the Court could not schedule a hearing time prior to the close of the dispositive motion period. The Court will not prejudice Defendant for accommodating the Court's schedule. As a result, Samuelson's Motion is denied.

Defendant moves to strike the Affidavit of Edgar Samuelson [Docket No. 59], arguing that Samuelson testifies to matters outside his personal knowledge in the affidavit. However, even considering Samuelson's affidavit, Defendant's Motion for Summary Judgment is granted; therefore, the Motion to Strike is denied as moot.

### IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Defendant ARAMARK Services, Inc.'s Motion for Summary Judgment [Docket No. 47] is **GRANTED**;

2.    Plaintiff Edgar Rudolph Samuelson's Motion to Strike [Docket No. 64] is **DENIED**; and

3.    Defendant ARAMARK Services, Inc.'s Motion to Strike [Docket No. 69] is

**DENIED**.

      **LET JUDGMENT BE ENTERED ACCORDINGLY.**

                                              BY THE COURT:


                                              s/Ann D. Montgomery
                                          ANN D. MONTGOMERY
                                          U.S. DISTRICT JUDGE

Dated:  August 29, 2006.